UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RANDA M. RHODES,<br><br>      Plaintiff,<br><br>v.<br><br>CREDIT GLORY, INC.,<br><br>      Defendant. | Case No: 3:22-cv-02095 |

## COMPLAINT

**NOW COMES** Randa M. Rhodes ("Plaintiff") by and through her undersigned counsel, complaining as to the conduct of Credit Glory, Inc., ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendant's violations pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.*, the Texas Debt Management Services Act ("TCDMSA") under Tex. Fin. Code § 394.201 *et seq.*, as well as for claims of Fraudulent Misrepresentation, Negligence, and Breach of Contract, stemming from Defendant's unlawful conduct.

### PARTIES

2. Plaintiff is a consumer over 18 years of age residing in Waxahachie, Texas.

3. Defendant is a credit repair organization that offers its customers the ability to eliminate and resolve credit reporting information through Defendant's credit repair services. Defendant is incorporated under the laws of the state of Nevada with its principal place of business located at 1887 Whitney Mesa Dr., Suite 2089, Henderson, Nevada.

4. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

### FACTS SUPPORTING CAUSES OF ACTION

5. In early 2022, Plaintiff was interested in resolving a number of obligations that she had accrued given her concern with being able to continue making the needed payments in connection with such obligations.

6. As such, Plaintiff began researching companies who could go about clearing up her credit history by assisting her in resolving her obligations.

7. In connection therewith, Plaintiff came across Defendant's website.[1]

8. When inquiring about the nature of Defendant's services, Plaintiff was informed that Defendant's services were represented as including Defendant sending disputes to the credit bureaus and creditors regarding inaccurate and unverifiable information on Plaintiff's credit reports.

9. On March 31, 2022, Plaintiff entered into an agreement in connection with Defendant's credit repair services. Plaintiff subsequently began making monthly payments to Defendant.

10. As part of Defendant's services, Plaintiff paid Defendant an initial sign-up fee of $100 and the first monthly payment of $99.00 for the first month's fee. Plaintiff was to continue to make a payment of $99.00 per month thereafter.

11. In total, Plaintiff paid Defendant $199.00 prior to any services being rendered by Defendant. Specifically, a sizeable portion of Plaintiff's sign-up fee and first monthly payment

---

[1] https://www.creditglory.com/#guarantee (last visited September 19, 2022)

went to an upfront retainer, despite such services not actually being performed by Defendant prior to accepting payments.

12. After months of making payments and informing Defendant of the inaccurate information which she wanted addressed through Defendant's dispute process, none of the inaccurate information had been removed from Plaintiff's credit reports.

13. Specifically, a representative of Defendant promised Plaintiff on two occasions that Defendant would "get her score to over 700 within 3 months."

14. Relying upon Defendant's representations regarding the nature and efficacy of its services, Plaintiff continued making her monthly payments to Defendant.

15. Defendant's conduct in representing that it could get her score to 700 within 3 months and effectively dispute and remove Plaintiff's information on her credit reports was inherently misleading and deceptive.

16. Plaintiff was also informed that continued maintenance of her monthly payments would, ultimately, go about improving her credit history as Defendant would be able to remove the obligations that she wanted addressed on her credit reports.

17. Plaintiff then persisted in making her monthly payments to Defendant for a number of months.

18. As Plaintiff proceeded in making her monthly payments, she would frequently ask for updates regarding the progress of Defendant's services, however, Defendant was hard to reach and when she did reach Defendant, she was perpetually given the run around.

19. Despite constantly getting the run-around from Defendant, Plaintiff persisted in making her monthly payments to Defendant.

20. Eventually, after months of making payments to Defendant, Plaintiff became extremely frustrated and distressed that she had been making monthly payments yet not seeing any results on the part of Defendant. Her credit score ultimately decreased due to Defendant's inactions.

21. First, Defendant's failure to sufficiently get any of the inaccurate information removed from Plaintiff's credit reports underscores the generally deceptive manner in which Defendant held out the efficacy of its services to Plaintiff.

22. Furthermore, it was deceptive for Defendant to represent the effectiveness of its services given that the credit reporting agencies are under no obligation to respond to the disputes submitted by Defendant or Credit Repair Organizations in general.

23. Pursuant to 12 C.R.F. §1022.43(b)(2), the credit reporting agencies are under no obligation to respond to disputes submitted by credit repair organizations like Defendant.

24. As such, Defendant misrepresented the nature of its services and that the credit reporting agencies would be obligated to respond to Defendant's disputes in a manner triggering the credit reporting agencies' investigatory obligations.

25. Even more, Defendant explicitly guaranteed results that she would be at a 700 credit score within 3 months. However, Plaintiff's credit score did not increase at all during these 3 months and instead decreased.

26. Ultimately, due to the fact that no positive changes occurred to Plaintiff's credit files, Plaintiff terminated her services with Defendant.

27. However, Defendant failed to refund Plaintiff the entire amount due under federal and state law, instead retaining portions of Plaintiff's payments for services it ultimately failed to perform.

28. Following Plaintiff's termination of her relationship with Defendant, Plaintiff spent months attempting to dig herself out of the hole created by Defendant's deficient provision of credit repair services.

29. Plaintiff suffered severe emotional distress, as well as significant out of pocket expenses and persistently depressed credit scores as a result of Defendant's deceptive and misleading conduct.

30. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding her rights.

31. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, lost time, out of pocket expenses, pecuniary loss stemming from the payments made to Defendant, denial of the benefit of her bargain, making payments to Defendant after relying on false and deceptive representations, as well as numerous violations of her federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

32. Plaintiff repeats and realleges paragraphs 1 through 31 as though fully set forth herein.

33. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

34. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit. Defendant's contract explicitly states that Plaintiff was retaining

Defendant to help "dispute information to fix inaccuracies or errors, and/or verify information is valid, complete, verifiable, and reporting 100% accurately"– and, as such, illustrates that Defendant's services are designed to improve a consumer's credit history as it would result in Plaintiff being able to resolve obligations that would otherwise go unresolved, which would present a benefit to Plaintiff's credit history when compared to the alternative of having debts that would otherwise go unresolved.

    a. **Violations of CROA § 1679b(a)**

35. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

36. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it would provide Plaintiff. Defendant represented, orally with Plaintiff, that it would increase Plaintiff's credit score to over 700 in the first 3 months. However, Plaintiff's credit scores actually decreased due to Defendant's services.

37. Additionally, Defendant violated the above provisions of the CROA when it deceptively and misleadingly gave Plaintiff the run-around when she would ask for updates or the status of Defendant's services. Defendant's representations were designed to convince Plaintiff that Defendant was actively working on resolving issues in her credit files; however, Defendant failed to perform the services it agreed to perform for Plaintiff.

### b. Violations of CROA § 1679b(b)

38. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

39. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Plaintiff's up front sign-up fee and monthly payments went towards various legal and other fees which were retained by Defendant prior to performing services or which were in connection with services Defendant never performed. Furthermore, upon Plaintiff's cancellation of the contract, Defendant improperly withheld purported charges and fees in connection with services it never performed, yet alone completely performed.

### c. Violation of CROA § 1679c

40. The CROA, pursuant to 15 U.S.C. § 1679c, outlines various disclosures that CROs must provide to consumers prior to entering into contracts with consumers.

41. Defendant violated § 1679c through its complete failure to provide Plaintiff a copy of the required disclosures.

**WHEREFORE**, Plaintiff, Randa M. Rhodes, respectfully requests that this Honorable Judge enter judgment in her favor as follows:

   a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

   b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

   c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

    d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and,

    e. Awarding any other relief as the Honorable Court deems just and appropriate.

**COUNT II – VIOLATIONS OF THE TEXAS CONSUMER DEBT MANAGEMENT SERVICES ACT**

42. Plaintiff restates and realleges paragraphs 1 through 41 as though fully set forth herein.

43. Plaintiff are "consumer[s]" as defined by Tex. Fin. Code § 394.202(4).

44. Defendant is a "provider" of "debt management service" as defined by Tex. Fin. Code §§ 394.202(6) & (10).

45. The TCDMSA's exclusion does not apply here because: (1) upon information and belief, Defendant is not licensed to practice law in the state of Texas; (2) even if it is licensed in the state of Texas, it nevertheless holds itself out to the public as a provider of debt management services or that it is otherwise affiliated with or working on behalf of a provider of debt management services; and (3) Defendant failed to actually perform any of the legal services it represented it would perform for Plaintiff.

    a. **Violations of Tex. Fin. Code §394.207**

46. The TCDMSA, pursuant to Tex. Fin. Code § 394.207, provides that "[a] provider may not engage in false or deceptive advertising,"

47. Defendant violated § 394.207 through its deceptive advertising directed towards Plaintiff regarding the nature of the services it would perform for Plaintiff. Defendant advertised that it would "get her score to over 700 within 3 months," but that representation was proven false through Defendant's subsequent conduct.

### b. Violations of Tex. Fin. Code § 394.209

48. The TCDMSA, pursuant to Tex. Fin. Code § 394.209, outlines the various requirements of the contracts entered into between debt management providers and consumers. One such requirement includes a statement "that establishment of a debt management plan may impact the consumer's credit rating and credit score **either favorably or unfavorably . . . .**" Tex. Fin. Code § 394.209(b)(7) (emphasis added).

49. Defendant violated § 394.209(b)(7) through its failure to include a number of the required disclosures in its contract with Plaintiff, including the disclosure regarding the potential impact of its services on Plaintiff's credit history and rating. Upon information and belief, Defendant intentionally failed to include this language in an effort to avoid the clear application of federal law.

### c. Violations of Tex. Fin. Code § 394.212

50. The TCDMSA, pursuant to Tex. Fin. Code § 394.212, outlines a number of prohibited practices on the part of providers.

51. Pursuant to § 394.212(a)(8), a provider may not "use an unconscionable means to obtain a contract with a consumer."

52. Defendant violated § 394.212(a)(8) when it unconscionably utilized knowing false representations regarding the nature of its services so as to induce Plaintiff's assent to the contract entered into between the parties.

53. Pursuant to § 394.212(a)(9), a provider may not "engage in an unfair, deceptive, or unconscionable act or practice in connection with a service provided to a consumer."

54. Defendant violated § 394.212(a)(9) through the deceptive and unfair nature of the representations made to Plaintiff and manner in which its services were subsequently provided.

### d. Violations of Tex. Fin. Code § 394.213

55. The TCDSMA, pursuant to Tex. Fin. Code § 394.213, states that a "provider has a duty to a consumer who receives debt management services from the provider to ensure that client money held by the provider is managed properly at all times."

56. Defendant violated § 394.213 through its failure to ensure that Plaintiff's money and payments were being properly managed at all times. Despite Plaintiff making her payments to Defendant, Defendant failed to perform the services for which it had been purportedly compensated. Furthermore, Defendant failed to manage Plaintiff's money when it failed to refund Plaintiff the entirety of her payments as Defendant breached its duty to manage Plaintiff's payments properly.

**WHEREFORE**, Plaintiff, RONDA M. RHODES, respectfully requests that this Honorable Court enters judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Tex. Fin. Code § 394.215(c);

c. Awarding Plaintiff punitive damages pursuant to Tex. Fin. Code § 394.215(c);

d. Enjoin Defendant from further violations of law pursuant to Tex. Fin. Code § 394.215(d);,

e. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Tex. Fin. Code § 394.215(c); and,

f. Awarding any other relief this Honorable Court deems just and appropriate.

### COUNT III – FRAUDULENT MISREPRESENTATION

57. Plaintiff restate and reallege paragraphs 1 through 56 as though fully set forth herein.

58. In Texas, the elements for a fraudulent misrepresentation claim include: (1) a material misrepresentation; (2) made with knowledge of its falsity or asserted without knowledge of its truth; (3) made with the intention that it should be acted on by the other party; (4) which the other party relied on; and (5) which caused injury.

59. Defendant engaged in fraudulent misrepresentation through the misrepresentations regarding the nature and efficacy of its services. Defendant misrepresented the credit repair services it would provide Plaintiff. Specifically, Defendant promised Plaintiff that Defendant would "get her score to over 700 within 3 months." Defendant made this representation despite knowing the false and deceptive nature of its representations. Defendant intended that Plaintiff rely on the representations as they were done in an attempt to convince Plaintiff as to the nature and efficacy of Defendant's services. Plaintiff relied upon Defendant's representations to her detriment as she agreed to use Defendant's services, and subsequently make payments, as a direct result of the way in which Defendant held out its services to Plaintiff.

60. As outlined above, Plaintiff was harmed by Defendant's fraudulent misrepresentations.

**WHEREFORE**, Plaintiff, RANDA M. RHODES, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Enter judgment in Plaintiff's favor and against Defendant;

b. Award Plaintiff her actual damages in an amount to be determined at trial;

c. Award Plaintiff equitable relief, including enjoining Defendant from further violations of law;

d. Award Plaintiff costs and reasonable attorneys' fees; and,

e. Award any other relief this Honorable Court deems equitable and just.

### COUNT IV – NEGLIGENCE

61. Plaintiffs restates and reallege paragraphs 1 through 60 as though fully set forth herein.

62. The elements of a negligence cause of action are: (1) existence of a duty of care owed to the plaintiff by the defendant; (2) a breach of that duty, and (3) an injury proximately caused by that breach.

63. Defendant owed Plaintiff a duty of care to provide its represented financial services in a competent manner. Defendant represented to Plaintiff that it would provide Plaintiff services in association with the services it was agreeing to perform. In so doing, Defendant assumed an extra-contractual duty of care which it owed to Plaintiff to perform such services. Defendant breached that duty of care, both by negligently failing to provide the represented credit repair services. Defendant repeatedly breached its duty to act in Plaintiff's interest, instead bilking Plaintiff out of thousands of dollars in payments for its own benefit.

64. As alleged above, Plaintiff was harmed by Defendant's conduct.

**WHEREFORE**, Plaintiff, RANDA M. RHODES, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Enter judgment in Plaintiff's favor and against Defendant;

b. Award Plaintiff her actual damages in an amount to be determined at trial;

c. Award Plaintiff equitable relief, including enjoining Defendant from further violations of law;

d. Award Plaintiff costs and reasonable attorneys' fees; and,

e. Award any further relief this Honorable Court deems equitable and just.

### COUNT V – BREACH OF CONTRACT

65. Plaintiff restate and reallege paragraphs 1 through 64 as though fully set forth herein.

66. Defendant breached the underlying agreement between the parties in several material respects.

67. Defendant breached the underlying agreement through its failure to perform any of the credit repair services it was contractually obligated to perform. Despite Defendant's contractual duty to remedy Plaintiff's issues on her credit reports, Defendant breached that duty through its subsequent conduct.

68. Defendant further breached the underlying agreement through its failure to refund Plaintiff for service fees in connection with services Defendant completely failed to perform. Defendant was contractually obligated to refund such amounts yet failed to do so.

69. As outlined above, Plaintiff was harmed by Defendant's breach of contract.

**WHEREFORE**, Plaintiff, RANDA M. RHODES, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages;

c. Award Plaintiff punitive damages; and,

d. Awarding any other relief this Honorable Court deems just and appropriate.

**Plaintiff demands a trial by Jury.**

Dated: September 21, 2022                           Respectfully submitted,

<u>/s/ Marwan R. Daher</u>
Marwan Rocco Daher, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone: (630) 575-8180
mdaher@sulaimanlaw.com